Leo J. CALLIER;  Anthony J. Callier,
Plaintiffs–Appellants,

v.

Charles H. GRAY, Defendant–Appellee.

No. 97–5741.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 9, 1998.

Decided Feb. 10, 1999.

Rehearing and Suggestion for Rehearing
En Banc Denied March 25, 1999.

Leo J. Callier, St. Louis, MO, pro se.

J. Richard McEachern (argued and briefed), McEachern Sigillito L.C., St. Louis, MO, for Plaintiffs–Appellants.

Anthony J. Callier, Salem, MO, pro se.

David W. Anderson, English, Lucas, Priest & Owsley, Norman E. Harned (argued and briefed), Amanda A. Young, Robert C. Chaudoin, Harned, Bachert & Denton, Bowling Green, KY, for Defendant–Appellee.

Before: WELLFORD, SILER, and GILMAN, Circuit Judges.

WELLFORD, Circuit Judge.

In August of 1993, Leo and Anthony Callier filed a complaint against defendant Charles Gray, making strong claims in a dispute over a partnership arrangement for the breeding and sale of a particular type of cattle. During the course of the proceedings, the district court determined that the Calliers had engaged in "a pattern of obfuscation and delay ... as to [their] discovery obligations and with respect to other Court orders," and that sanctions would thus be appropriate against the Calliers. After repeated motions to dismiss by Gray, who had filed a counterclaim against the Calliers, and after further findings that the plaintiffs "[had] ignored or disobeyed the Court's order without offering any explanation," the district court sustained defendant's motion to dismiss the original complaint with prejudice on December 30, 1996. The scheduled January 1997 trial was continued, and defendant's motion for judgment by default "held in abeyance." [1]

In January of 1997, the district court, after numerous filings and counterclaims by defendant Gray, referred this case to Magistrate Judge Dixon for an evidentiary hearing on defendant Gray's counterclaims against the Calliers and directed the magistrate judge to prepare findings of fact, conclusions of law, and recommendations as to final disposition on Gray's claims. After entering a default judgment against the Calliers based on the magistrate judge's recommendation, the district court referred the question of the amount of damages to the magistrate judge on March 5, 1997. A hearing on this issue was held before the magistrate judge on March 11, 1997, with the district court approving the magistrate judge's recommendation in a final judgment dated May 15, 1997. The Calliers bring this appeal claiming that the district court's referrals were improper and that accordingly, the magistrate judge had no authority to act as he did at various stages of the proceedings. Because we find that the magistrate judge did have proper jurisdiction over the matters in question, we **AFFIRM** the judgment of the district court.

## I. FACTS AND PROCEDURAL HISTORY

This case has a long and complicated history, and for that reason, only the facts relevant to this appeal will be recited. After the aforementioned counterclaim referral by the district court to the magistrate judge, Magistrate Judge Dixon submitted an order setting the case for a final pretrial conference within ten days, and for an evidentiary hearing in two weeks. This order specifically warned the Calliers that failure to appear for the pretrial conference would be considered as an indication that they no longer wished to participate in the case. The Calliers were promptly served with this order, as duly noted on the docket sheet.

On January 16, 1997, the date of the final pretrial conference at which the Calliers did not appear, Gray filed a default judgment motion on the issue of liability and a request for an evidentiary hearing on the issue of damages due to the Calliers' failure to appear, a not uncommon occurrence during the proceedings. As reflected by the magistrate judge's order, Gray had orally moved for

---

1. The district court also indicated it would consider further sanctions against the plaintiffs.

entry of a default judgment at the purported pretrial conference. In accordance with Magistrate Judge Dixon's direction, Gray filed a written motion for default judgment, calling for a response within a week. The Calliers did not respond.

The magistrate judge promptly thereafter made findings of fact, conclusions of law, and a recommendation, entered January 30, 1997. This filing by the magistrate judge *recommended* that a default judgment be entered on the question of the Calliers' liability to Gray and included a description of the Calliers' refusal to obey various orders of the court dating back to March of 1996. This filing by the magistrate judge, we believe, constituted findings under Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636, as called for in District Judge Heyburn's order entered on January 7, 1997. In making these findings, Magistrate Judge Dixon referred to both this provision of the Rules and the statute. The report and recommendation also included express notice that failure to object to the findings of fact and recommendation would mean further appeal would be waived under *Thomas v. Arn*, 728 F.2d 813 (6th Cir.1984), *aff'd by* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). The Calliers made no objections to the findings of fact and recommendation. The district judge, in accordance with the magistrate judge's findings, recommendations, and conclusions, entered an order on February 21, 1997. Inasmuch as Gray's damages were unliquidated, the judge indicated that a subsequent evidentiary hearing would be necessary in order to determine the amount of damages due Gray. Again, there was no responsive action by the Calliers.

On March 5, 1997,[2] Judge Heyburn ordered this damages referral to the magistrate judge to determine the amount of damages involved. This order of referral was specifically made pursuant to 28 U.S.C. § 636(b)(1)(B). The magistrate judge scheduled an evidentiary hearing for March 11, 1997. Once again, there was no response by the Calliers.

The Calliers failed to appear for the scheduled evidentiary hearing. Magistrate Judge Dixon submitted findings of fact, conclusions of law, and recommendations, dated April 18, 1997, following the evidentiary hearing. The same notice was included that failure to object to the findings, conclusions, and recommendations would waive any further appeal, and a copy of the magistrate judge's actions on the damages issue was sent to the Calliers by certified mail.

The final judgment approving and awarding damages was made by Judge Heyburn on May 15, 1997. This appeal by the Calliers followed that judgment.

## II. *JURISDICTION*

■ We are first presented with the question of whether the magistrate judge had jurisdiction to take the actions involved, which resulted in a default judgment and imposition of substantial damages. Gray argues that the Calliers waived any right to appeal by not objecting to either the initial referral of the district court judge to the magistrate judge, or to the recommendations of the magistrate judge. We disagree, finding that we do have jurisdiction to consider the Calliers' challenge, but only as to the narrow question of whether the referrals by the district court judge to the magistrate judge were valid. It is axiomatic that we have the right to raise *sua sponte* a question of jurisdiction which may include the authority of a magistrate judge to act in a specific manner in a particular referral made without consent of the parties. *See Massey v. City of Ferndale*, 7 F.3d 506, 508 (6th Cir.1993); *Bennett v. General Caster Serv. of N. Gordon Co.*, 976 F.2d 995, 997 (6th Cir.1992) (per curiam).

■ We deem, under the circumstances, however, that the Calliers waived any objection, if they had any right to object, to the actual findings and recommendations on damages of the magistrate judge. The Calliers had an opportunity at several stages to object to the reference to the magistrate judge and to his findings, conclusions, and

---

2. The Order is dated March 5, but was not entered until March 10.

recommendations.[3] The Calliers simply gave up their opportunities in this regard. Thus, we limit our analysis to the question of whether the initial referrals by the district court judge to the magistrate judge in the two instances were proper, and, thus, whether the magistrate judge had the authority to take the actions belatedly challenged on appeal. We do not address the *merits* of the findings, conclusions and recommendations made by the magistrate judge in this case.

## III. DESCRIPTION OF REFERRALS

The first referral related to the counterclaims made by Gray against the Calliers, and this ultimately ended in default judgment against the Calliers. Specifically, the Calliers point in their brief to what purports to be a default judgment triggered by the magistrate judge: "The entry of a Default Judgment is clearly dispositive of a case and is not a pretrial matter within the meaning of 28 U.S.C. § 636 or Rule 72 of the Federal Rules of Civil Procedure. [Thus,] [t]he trial court should not have abdicated its responsibility to a Magistrate Judge." The magistrate judge, however, did not *enter* a default judgment in this case; he specifically indicated: "In view of the foregoing, the undersigned [magistrate judge] *recommends* that the defendant's motion for default judgment as to liability be sustained and that a default judgment be entered ...." (emphasis added). No basis for this initial referral was cited by the district court in its order referring this issue to the magistrate judge.

The second referral by the district court involved the question of the amount of damages, both liquidated and unliquidated, to be awarded to Gray. The district court in its order referring this issue to the magistrate judge specifically cited 28 U.S.C. § 636(b)(1)(B) as the basis for the authority to do so. Since the district court had already entered a default judgment on the issue of liability as to Gray's claims against the Calliers, the proceeding involving damages was a post-judgment one.

## IV. 28 U.S.C. § 636 AND FED. R. CIV. P. 72

28 U.S.C. § 636 deals with the type of proceeding and matters that the district court may refer to a magistrate judge, and the timing and method of referral. 28 U.S.C. § 636(b)(1)(A) states that the judge "may designate a magistrate to hear and determine any pretrial matter pending before the court,"[4] excluding a number of motions spelled out in that section. These *excluded* motions are:

> [F]or injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.

28 U.S.C. § 636(b)(1)(A). Fed.R.Civ.P. 72(a) has implemented this statutory provision, *see Massey*, 7 F.3d at 509.[5] 28 U.S.C. § 636(b)(1)(B) provides that "a judge may also designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any

---

**3.** Had the Calliers utilized their chance to object to certain aspects of the damages award, they may have been successful, but such opportunity was ignored and waived.

**4.** These are usually referred to as nondispositive motions and engender a clearly erroneous review from the district court. *See* Fed.R.Civ.P. 72(a).

**5.** Rule 72(a) provides:

(a) Nondispositive Matters. A magistrate to whom a pretrial matter not dispositive of a claim of defense of a party is referred to hear and determine shall promptly conduct such proceeding as are required and when appropriate enter into the record a written order setting forth the disposition of the matter. Within 10 days after being served with a copy of the magistrate's order, a party may serve and file objections to the order; a party may not thereafter assign as error a defect in the magistrate's order to which objection was not timely made. The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate's order found to be clearly erroneous or contrary to law.

motion excepted in subparagraph (A)." [6] Fed.R.Civ.P. 72(b) has implemented sections 636(b)(1)(B) and (C), *see Massey*, 7 F.3d at 509.[7]

## V. *COUNTERCLAIM REFERRAL*

■ While these aforementioned authorities make no specific reference to motions for default judgment, we conclude that they, nevertheless, authorize the default judgment action in this case for three reasons. First, a motion for default judgment has been treated by the few other courts that have dealt with the matter as being effectively the same as a motion for involuntary dismissal, which is specifically covered in 28 U.S.C. § 636(b)(1)(A) and (B). *See In re Powderhorn Ski & Development Corp.*, 194 B.R. 903, 907 n. 2 (D.Colo.1996) ("I see no reason to view the entry of default judgment under Rule 55 as a sanction any differently than the involuntary dismissal of an action under Rule 41(b) . . . .") (citing *Mobley v. McCormick*, 40 F.3d 337, 340–41 (10th Cir.1994)); *Rouser v. Johnson*, 1993 WL 293281 at *1 (E.D.La. July 23, 1993) ("Default judgment has the effect of involuntary dismissal for which the magistrate must submit to the district judge a proposed finding and recommendation pursuant to § 636(b)(1)(A).") *aff'd by* 36 F.3d 90 (5th Cir.1994); *cf. Woods v. Dahlberg*, 894 F.2d 187, 187 (6th Cir.1990) (per curiam) (denial of motion to proceed *in forma pauperis* is functional equivalent of involuntary dismissal); *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1463 (10th Cir.1988)

(Rule 37 order striking pleadings with prejudice is the equivalent of involuntary dismissal). Since both the district court and the magistrate judge effectively treated the motion for default judgment as a motion for involuntary dismissal by authorizing only a recommendation, not final dispositive action, their actions fall within the § 636 statutory scheme.

Second, this court has previously held that the list of dispositive matters in 28 U.S.C. § 636(b)(1)(A) is nonexhaustive, and thus can include motions that are similar to those listed. *See Massey*, 7 F.3d at 508; *Bennett*, 976 F.2d at 997. As stated above, a motion for default judgment is substantially similar to several of the listed motions in the § 636 statutory scheme.

Third, although neither subsection (b)(1)(A) nor (b)(1)(B) specifically allow a referral of a motion for default judgment, they do not preclude a magistrate judge from recommending, upon proper reference of a pretrial matter (including a motion question), that a default judgment be entered against a party for good cause determined. *See Ackra Direct Marketing v. Fingerhut Corp.*, 86 F.3d 852, 855 (8th Cir.1996) (noting that "the magistrate judge issued his report, and recommended that the motion for default judgment should be granted in its entirety"). We therefore conclude the referral and actions taken with respect to the default judgment to

---

**6.** These are usually referred to as dispositive motions and engender a de novo review from the district court. *See* Fed.R.Civ.P. 72(b).

**7.** Rule 72(b) provides:

(b) Dispositive Motions and Prisoner Petitions. A magistrate assigned without consent of the parties to hear a pretrial matter dispositive of a claim or defense of a party or a prisoner petition challenging the conditions of confinement shall promptly conduct such proceedings as are required. A record shall be made of all evidentiary proceedings before the magistrate, and a record may be made of such other proceedings as a magistrate deems necessary. The magistrate shall enter into the record a recommendation for disposition of the matter, including proposed findings of fact when appropriate. The clerk shall forthwith mail copies to all parties. A party objecting to the recommended disposition of the matter shall promptly arrange for the transcription of the record, or portions of it as all parties may agree upon or the magistrate deems sufficient, unless the district judge otherwise directs. Within 10 days after being served with a copy of the recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations. A party may respond to another party's objections within 10 days after being served with a copy thereof. The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate with instructions.

be valid and to confer jurisdiction for the district court's dispositive action.[8]

## VI. DAMAGES REFERRAL

■ We now discuss the basis of authority for the damages referral. Section 636(b)(1)(A) may not be used as the basis for the referral due to the fact that a determination of damages is not normally a pretrial matter, as required by (A). *See Estate of Conners v. O'Connor,* 6 F.3d 656, 659 (9th Cir.1993); *see also Homico Constr. & Dev. Co. v. Ti–Bert Sys., Inc.,* 939 F.2d 392, 394 n. 1 (6th Cir.1991); *Bennett,* 976 F.2d at 998 n. 5; *Massey,* 7 F.3d at 510; *Paris v. United States Dep't of Hous. & Urban Dev.,* 795 F.Supp. 513, 516 (D.R.I.1992), *rev'd on other grounds by* 988 F.2d 236 (1st Cir.1993); *Pettyjohn v. Sullivan,* 801 F.Supp. 503, 506 (W.D.Okla.1992), *rev'd sub nom. on other grounds Pettyjohn v. Shalala,* 23 F.3d 1572 (10th Cir.1994); *West v. Redman,* 530 F.Supp. 546, 547 (D.Del.1982) (all concluding that post-judgment motions, such as for attorney's fees or sanctions, cannot fall under § 636(b)(1)(A) because they are not *pretrial* matters).[9] Though § 636(b)(1)(B) could conceivably be used as the basis, and was explicitly cited by the district court as its basis of authority for this referral, we find it problematic to treat this reference as sufficiently analogous to the eight types of matters listed in (B), as required by *Bennett,* 976 F.2d at 997. Thus, we must turn to another basis of authority for the damages referral.

28 U.S.C. § 636(b)(3) is a broad provision permitting assignment by the district court to the magistrate judge "such additional duties as are not inconsistent with the Constitution and the laws of the United States." The Supreme Court in *Gomez v. United States,* 490 U.S. 858, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989), discussed at some length the proper interpretation of this subsection:

> Read literally and without reference to the context in which they appear, [28 U.S.C. § 636(b)(3) ] might encompass any assignment that is not explicitly prohibited by statute or by the Constitution.... The panel majority below and the dissenters in [*United States v.*] *Ford* [824 F.2d 1430 (5th Cir.1987)] (en banc) embraced this construction, despite abiding concerns regarding the constitutionality of delegating felony trial duties to magistrates.

> It is our settled policy to avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question. In these cases, such an alternative interpretation of the additional duties clause readily may be deduced from the context of the overall statutory

---

**8.** We also recognize that another valid basis of jurisdiction for this referral comes from § 636(b)(3), discussed *infra* in Part VI. We had occasion to consider the legislative history of this section in *Banks v. United States,* 614 F.2d 95 (6th Cir.1980):

> Under this subsection, the district courts would remain free to experiment in the assignment of other duties to magistrates which may not necessarily be included in the broad category of "pretrial matters." This subsection would permit, for example, *a magistrate to review default judgments,* order the exoneration of forfeiture of bonds in criminal cases, and accept returns of jury verdicts where the trial judge is unavailable.

*Id.* at 97 (emphasis added). Thus, we have previously recognized that this section would permit a referral such as the one ultimately resulting in a default judgment in this case.

**9.** We reject the strained logic of cases such as *Johnson v. Old World Craftsmen, Ltd.,* 638 F.Supp. 289, 291 (N.D.Ill.1986), which holds that though a motion for attorneys' fees and costs was not pretrial in the temporal sense, it could still be considered pretrial in the sense that it was not related to trial, and *United States v. Flaherty,* 668 F.2d 566, 586 (1st Cir.1981), which has a similar holding, in the instant action. Furthermore, though we recognize that these cases have since been validated by a recent amendment to the Federal Rules of Civil Procedure which allows motions for attorney's fees to be referred to a magistrate judge as a dispositive pretrial matter, *see* Fed.R.Civ.P. 54(d)(2)(D) (added on Dec. 1, 1993, and stating that "the court ... may refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter") and Fed.R.Civ.P. 54(d)(2)(D) advisory committee's note, 1993 amendment ("The district judge may designate a magistrate judge to act as a master for this purpose or may refer a motion for attorneys' fees to the magistrate judge for proposed findings and recommendations under Rule 72(b)."), we are hesitant to make the same leap those courts did and apply this provision to the analogous, yet still distinct, referral for damages absent a specific grant from Congress.

scheme. When a statute creates an office of which it assigns specific duties, those duties outline the attributes of the office. Any additional duties performed pursuant to a general authorization in the statute reasonably should bear some relation to the specified duties. Thus in *United States v. Raddatz*, 447 U.S. 667, 674–676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976); and *Wingo v. Wedding*, 418 U.S. 461, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974), we interpreted the Federal Magistrates Act in light of its structure and purpose.

Declining to choose either extreme or to read the "additional duties" language literally, we examined the Act's structure and determined that limited, advisory review, subject to the district judge's ongoing supervision and final decision, fell among the "range of duties" that Congress intended magistrates to perform.

*Id.* at 863–65, 109 S.Ct. 2237 (1989) (citing *Mathews v. Weber*, 423 U.S. 261, 270, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976) (footnotes and internal citations omitted)).

We believe the referral to the magistrate judge to determine damages, under the circumstances, falls within the purview of *Gomez* and *Mathews* as bearing a particular relationship to the other § 636 specified duties of the magistrate judge. The referral, furthermore, was "subject to the district judge's ongoing supervision and final decision." There was no objection, we emphasize, and the magistrate judge afforded plaintiffs reasonable opportunities to be heard.

A number of courts have held that under analogous post-judgment circumstances, § 636(b)(3) is a proper basis for jurisdiction in referring such a matter to a magistrate judge. *See Continental Bank, N.A. v. Everett*, 861 F.Supp. 642, 643 (N.D.Ill.1994) (stating that a "petition for attorneys' fees is not one of the enumerated duties assignable to a magistrate judge under the statute determining their jurisdiction, instead falling under

the statute's catch all provision"); *Pettyjohn*, 801 F.Supp. at 506 (stating that thereafter in that court, post-trial attorney fee applications shall be referred pursuant to § 636(b)(3)); *Paris*, 795 F.Supp. at 516.

We are not to be understood as approving the wholesale reference of claims and counterclaims for damages to magistrate judges, without consent of all parties concerned, by district judges in order to facilitate resolution of a case, even by means of a report and recommendation of a magistrate judge. Article III judges—and juries—are to be ultimate determiners of the facts and evidence, and are called upon, in the last analysis, to weigh credibility in the usual case, rather than the magistrate judge. *See United States v. Raddatz*, 447 U.S. 667, 681–82, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Freeman v. County of Bexar*, 142 F.3d 848, 851 (5th Cir.1998); *United States v. Dees*, 125 F.3d 261, 268–69 (5th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1174, 140 L.Ed.2d 183 (1998).

In this case, however, we are convinced that the referral for determination of damages to the magistrate judge was proper under § 636(b)(3).[10]

## VII. CONCLUSION

We find that the counterclaim referral made in this case by the district court to the magistrate judge, and the magistrate judge's subsequent recommendation of default judgment, was proper under several bases of jurisdiction. The damages referral was also proper and had a sufficient basis of jurisdiction for the reasons indicated.

We have reviewed the actions of the district judge and the magistrate judge on the record presented and conclude that there was no error demonstrated in rendering the district court's judgment, including award of sanctions, default judgment, and damages.

---

**10.** An additional basis for jurisdiction of the magistrate judge on the damages dispute in this case might lie under Rule 53 of Fed.R.Civ.P., which applies where there are "matters of account and of difficult computation of damages." *See* Rule 53(b). We reach no specific determination that Rule 53 would necessarily apply in this case because we have concluded that the referral was appropriate under § 636 for the reasons indicated.

Accordingly, having found jurisdiction, we **AFFIRM** the judgment of the district court.